Good afternoon. It is English v. Rockford Mutual Insurance Company 410-0751. For the appellant, Mr. Unrath. For the appellees, Mr. Doskotch. Is that how you pronounce it? And Mr. Lamontia. Lamontia, thank you. You may proceed. Good afternoon. My name is Craig Unrath and I represent Rockford Mutual. The question before this court is whether this court will enforce a policy exclusion for injuries arising out of the use of a motorized vehicle. The policy is a farm policy, similar to a commercial general liability policy or a homeowner's policy. They all have one thing in common. They all exclude claims for injuries involving motor vehicles. Now, this case was somewhat unusual because we're not dealing with a simple car crash. We're dealing with a pickup truck pulling a farm implement, a disc chisel. So a considerable amount of time in the trial court was spent discussing the nature of this. Is the farm implement a motorized vehicle? Is the definition of a motorized vehicle? Is that in some way dispositive? There's a mention in the definition that motorized vehicles may include the equipment that is associated with that vehicle. I'd like to submit that all of that entire discussion is irrelevant. None of it really matters. We're dealing with a single question here. A very simple question, but a very critical question. The question is this. Did the claimants suffer injury, directly or indirectly, as a result of Ron Flugel's use of a motorized vehicle? That's the only question at issue here that tracks the policy language perfectly. If these injuries arose out of the use of a motorized vehicle, then there is no coverage under the policy and there is no duty to defend. Now, a strong case can be made that all of the injuries were caused as a direct result of the use of a motorized vehicle. Briefly, this is what happened. He's towing a farm down the highway. He sees traffic coming the other way, I imagine. He pulled the pickup truck off to the right side of the road. The disc chisel struck a guardrail, careened off, and went into the opposite lane of traffic where it collided with the school bus. Now, the fact that the pickup truck did not make physical contact with the school bus is of absolutely no importance here at all. The mere fact that this disc chisel struck the bus as a result of being towed by a motorized vehicle, the fact that it struck the bus because Ron Flugel was using a motorized vehicle, that is the single question that determines the outcome of this appeal. Plaintiffs contend, well, because the disc chisel was the only thing that made contact with the bus, that we're just not dealing with a motorized vehicle accident. With respect, I believe we're parsing words. We're not talking about whether this is a motorized vehicle accident, although to me it seems clear that it was. What we're dealing with is this. What caused this accident? The allegations do not control. It's the cause of the accident that will determine whether or not this policy applies, whether this policy offers coverage. The plain and simple fact is that this accident could not have occurred unless the allegations are true that Ron Flugel negligently towed this vehicle down the highway. In other words, Ron Flugel was negligent in the use of a motorized vehicle. Now, the Supreme Court has addressed this very question in a very brief opinion, the Northbrook decision. They said that the motorized vehicle exclusion will be enforced unless the claimants can come forward with allegations that are wholly independent of the use of a motorized vehicle. Now, the disc chisel didn't get out on the highway by itself. It couldn't. It doesn't have a motor. It is impossible to divorce the use of a motorized vehicle from this accident. It simply could not have occurred. Now, as we pointed out in our brief, the allegations and the underlying complaints are filled with violations of the Illinois Motor Vehicle Code. And they point out fairly enough in their brief, they said, well, that doesn't mean we're conceding that this is a motor vehicle accident. And I'd say that's a fair response. But it does point out the nature, it illustrates the nature of this accident. We are dealing with a motor vehicle accident. He failed to keep a proper lookout. He failed to, while driving his pickup truck, he failed to operate his pickup truck in a safe manner. Now, they raised a couple of other allegations. They said, well, what about putting flags on that? Now, that has nothing to do with driving or moving a vehicle on the highway. In a sense, there's some truth to that. But it's a bit strange. The only reason we put flags on large trailers and oversized equipment is so that they will be noticed on the highway by other vehicles, thereby avoiding any danger. Again, this goes right to the very heart of what this case is all about, negligence in the use of a motorized vehicle. Now, I wanted to point out and emphasize two cases that I cited in my brief. The first one is State Farm v. Perez. In the Perez case, the claim was, well, yes, the defendant was injured in a motor vehicle accident, but not because of the accident, not because of negligent driving or whatever. It was caused because he altered the seats, changed the seat belts. That's what actually led to her injuries. And the court rejected that notion. They said, it doesn't matter. The only way this injury could have arisen is if this motor vehicle was moving down the highway. Under a situation like that, the allegations in the underlying complaint are not wholly independent of the cause of the injuries. The second case is a very recent decision out of the 3rd District, and I think it's interesting because it kind of cuts both ways. Their policy in Maxim, Maxim Indemnity v. Gillette, the policy at issue in that case defined motorized vehicle as including trailers. Well, that takes care of a big chunk of the case right there. Their case involved a parade float. Does that parade float constitute a trailer? Well, that was pretty easily answered. Yes, it was. Therefore, all of those allegations were barred under the motorized vehicle exclusion. But what about these other allegations? They also alleged that they were negligent because they forgot to put handrails on the parade float. They said, well, that's completely divorced from the allegations of the use of a motorized vehicle. The 3rd District reviewed that and rejected that argument. They said, in the end, you're still dealing with injuries that were caused because this thing was in motion, because it was being towed, because it was the use of a motorized vehicle. I'd say that the same considerations apply in this case. The fact that the disc chisel was not motorized, the fact that the pickup truck never made contact with the bus, all of these are irrelevant. In the end, this case was caused, allegedly, by the negligent operation of a pickup truck. Now, I opened my briefs with kind of a short description of the nature of the policies themselves, and I want to explain just why I did that. We're dealing with an issue of the duty to defend, which is very, very broad. Claims that even potentially fall within our coverage, we have a duty to defend. And then you counter this with what appears to me to be a fairly restrictive rule that the Supreme Court noted in Northbrook. The counterpart to that is that there is no coverage. A motorized vehicle exclusion will apply unless you can allege claims that are wholly independent of the accident that caused the injury. So how do you explain that dichotomy there? This very broad grant of duty to defend, but a very narrow duty or coverage in cases that are not wholly independent of the cause of the accident. And I think the explanation lies in the nature of the policies themselves. Farm policies, CGL policies, homeowner's policies, these are not designed to cover auto accidents. If they were, it would enormously change the insured risk, and the entire nature of the coverage is altered with, as you can imagine, significant consequences as to the premiums charged. That is the reason for this split between a broad grant of the duty to defend and the narrow limitations on which cases will be allowed, or we do have that duty to defend. I'd just like to conclude by stating that it is impossible to characterize Ron Flugel's use of this pickup truck in any way as being incidental to the accident that caused injuries. Under these circumstances, there is no coverage under the policy, and accordingly, no duty to defend. Thank you very much. Thank you, counsel. Proceed. Good afternoon, Justices. May it please the Court of Counsel. John Lamontilla on behalf of the Oppolese Turner's Bus Service. Your Honor, the Oppolese believe that the Circuit Court Judge Boknek's ruling denying the motion for judgment on the pleading should be affirmed by this Court. Respectfully disagreeing with counsel for the appellant, the disc chisel plow is the proximate cause of the collision and the injuries that have been claimed in the underlying matter. The complaints in this matter clearly allege wholly separate and distinct statutory violations directly against the piece of farm machinery, the disc chisel plow, that are completely independent of the means of the conveyance. So if it's sitting in the field, this accident would have happened? We're not claiming that, Judge. What we're claiming, Mr. Justice, is that the method of conveyance is simply a condition. However, there are independent, I believe courts have previously ruled that all this Court needs to consider is that if there is an independent allegation in the complaint, that would be sufficient enough to determine an ambiguity to bring coverage into. So if you're an insurance company and you don't want to cover motor vehicle accidents, what language would you put in so that disc chisels aren't covered? I appreciate that. That's a very good distinction because I believe that's the one that the Circuit Court hung their head on here. In their own policy, Rockford Mutual takes pains to define what a motorized vehicle is for purposes of the exclusion that they're seeking to use here. That definition of motorized vehicle does not include anywhere in it attached farm machinery or attached equipment. I believe it's important to note that the insurable interest is not the pickup truck here. It is the disc chisel plow. In a separate definition for what's called a motor vehicle, the Rockford Mutual policy does take the time to elicit a definition that includes attached machinery and equipment. So this wasn't injury or damage resulting from the operation of a pickup truck? We submit that that may be a separate condition, and there are allegations in the complaint of that, Mr. Justice. But also, it happened to be the size of the disc chisel plow, the fact that it was not properly flagged or tagged. This is a farm implement, and it is a piece of farm machinery. These insurance policies that take on this farm equipment have to anticipate that the farm machinery has to be moved to be used. It has to cross the road to go to another piece of the farm. I submit to you that even if it were sitting, the method of conveyances is irrelevant here. It could be drawn by a horse. It happened to be by a vehicle. The complaints clearly state, though, that because of the size of the load, the width of the chisel plow, the fact that there was no escort for it under statute... Well, you can still sue the guy who was pulling it. The issue is whether his insurer covers it. I mean, why don't you go after his automobile insurer? The plaintiffs have done that. Okay, so it's not as if you're left without a remedy. The question is, why should the insurance company insurance the farm implement? It says, by the way, we're not covering motor vehicles, directly or indirectly. Injury is coming from that. You haven't answered my question yet. How do you say, and we mean it. If you were the insurance company and you wanted to avoid liability in this very case, what language would you use that they didn't use? In the definition of what a motorized vehicle is, that is included in the exclusion, they would include the motorized vehicle as a vehicle with a motor and any attached machinery or equipment in tow. Like they do in the next definition, which is not part of the exclusion. So I believe that there is enough of an ambiguity. And I believe that the cases that have come down that this court has looked at can be distinguished, in the sense that the fact that these complaints make up to five separate different allegations that do not even involve the pickup truck here that specifically go towards this chisel plow, would give a single, if not more, allegations for the court to construe against this policy. And when you look at the insurance policy and you see motorized vehicle and you see a definition that doesn't include anything about attached machinery or equipment, and then you see an exclusion that just talks about motorized vehicles, you have to wonder and think, if they didn't mean to include it in the definition of motorized vehicle, then this chisel plow, which was the proximate cause of the collision with the bus and injuring these children, that creates an ambiguity. It's not directly or indirectly caused by a motor vehicle. I guess I'm not willing to concede that. What is the indirectly? Did we just read that out entirely? That doesn't count? Indirectly only in the sense that the pickup truck is not the insurable interest here. The pickup truck does not come under the definition of motorized vehicle for this policy. The pickup truck is not with Rockford Mutual insured. The disc chisel plow is what is insured, and I believe that's what the circuit court came to consider, that everybody's looking at the fact that there's a pickup truck here, and that may be indirectly, but if they wanted to include the pickup truck in the definition of motorized vehicle, they should have included the language about having a piece of machinery in tow. And because they didn't, I believe that's a sufficient ambiguity in order to inure to the insurance benefit to declare coverage here. The USF&G case, 1982 in the first district, held that if there is a liability that can arise from any negligent acts that are non-auto conduct, then the policy is applicable, regardless of whether or not an auto is being involved. I believe the USF&G versus State Farm case falls squarely on the same facts that are here. If the complaint includes allegations that are not related to the operation of the vehicle, and we have several in the underlying complaints in this matter, then that is a sufficient non-auto conduct to construe the policy applicable for coverage. I believe also the case of Marsh versus Pekin speaks on this issue as well, where a dump truck backed over a young child, and in that complaint there were allegations of road construction, where flagmen, failure to put flagmen out, failure to put warning devices. The fifth district affirmed the trial court in that case, saying that the complaint does allege matters within the policy, or potentially within, that the allegations that they include about not having a flagman or warning device are not related to what the truck was doing, or who was driving the truck, or how the truck was being driven. And therefore, there was a separate and distinct allegation. And I would submit that the police are not required to prove their pleadings at this stage. It's a motion for judgment of pleadings. Is there any dispute factually in this case? There is no dispute factually as to the occurrence. And I would say that... So it's a question of what does this insurance policy mean? It's a question of their own definitions. When the Rockford Mutual takes the pains to define motorized vehicle, and fails to include the fact that, you know, there would be an attachment... What about the third district at Maxim? Yes. You don't address it at all, I think, in your brief. I believe that's correct, Mr. Justice. And the third district said that the float involved in that case only created a risk when the float was in motion, essentially being pulled by a motor vehicle, and said, No, this is not... The policy exclusion covers it, and they reversed the trial court. Would we have to disagree with Maxim in order to affirm in this case? You would, but... Is Maxim wrongly decided? Well, it can be distinguished importantly, Mr. Justice, in this matter. In the Maxim case, the definition of auto specifically includes trailer. That was part of what the court said in the third district. They also said what I just maintained, that the float had to be pulled by a motor vehicle, therefore the exclusion applied. It did, and in coming to that decision, I believe they had to look at the actual language of the policy to determine that, yes, a trailer is part of auto definition. I believe the distinction in this case is that the definition of motorized vehicle doesn't include the attached, and if they wanted it to be included, it should have been in there. And I think any ambiguity, Your Honor, respectfully, has to inure to the insurance here, in the sense that there should be coverage. I understand that it's... The movement of the vehicle, having the farm implement in tow, is hard to get around, only in the sense that we have pled... I'm sorry, excuse me, the plaintiffs, the underlying plaintiffs in this matter, have pled separate matters, and... I don't understand what that has to do with the issue before us. Well, because I believe that the courts, specifically in the Oakley case, in USF&G, and in the Marsh cases I previously discussed, say as long as there's a separate and distinct allegation that doesn't relate to the auto part of the claims, then that's sufficient enough to construe coverage. In this case, there are specific violations made pursuant to 625 ILCS 5-15-102B. That's the vehicle code? It is the vehicle code, Mr. Justice, it does... So we can consider the vehicle code on some of the counts, but then we're supposed to disregard it when we ask the question whether this is indirectly caused by a motor vehicle? It's only in the sense that the motor vehicle, the pickup truck in this case, is not the insurable interest. We're talking about the disc chisel plow. And the disc chisel plow, let's say hypothetically that the motorized vehicle got a flat tire, the pickup truck got a flat tire, and pulled over to the side of the road. Now it's not moving. And there's the disc chisel plow behind it. And the school bus comes along, and because that disc chisel plow is sitting wide on the road without any flags, without any of the implements that are designed to warn other motorists that there is a wide load, and the bus comes and the chisel plow strikes the bus, in that case, we wouldn't be having this discussion. I do understand that because there's a pickup truck involved and it's in motion, that that is a... The disc chisel struck the guardrail, moved into the opposite lane of traffic, and struck the bus. Yes. How, then, is the example you just gave pertinent? It's pertinent in the sense that looking at the outcome of how the fact's determined, which I believe would be for a trier of fact to consider, which has been premature at this point because we came to a motion for judgment on pleadings, the fact that the complaints do state separate violations, statutory violations, that have nothing to do with motion, the motion of the disc chisel plow, we believe that would support the holdings and the reasoning in the USF&G case and in the Marsh case where they found that an independent, separate and distinct allegation was enough. I believe also because the policy itself and the fact that the trial court did look at the four corners of the policy as against the complaint to see that the policy itself went to pains to talk about the motorized vehicle, but when it didn't find anything about attached equipment in that definition, I believe that that is where the circuit court found the ruling. Have you divided your time? Yes. I should state I'm going to defer to Mr. Duskoch for the last five minutes. I do respectfully submit that the op-ed leads have shown an ambiguity in the policy sufficient enough to construe coverage, and I appreciate the court's elucidation on these points. Thank you. Chris Duskoch on behalf of the additional appellees in the joint brief regarding the same. I'm just going to follow up on what Mr. LaMantia said, if it would please the court and counsel. One point that I think Mr. LaMantia was making regarding if the chisel plow was not moving or if there was a flat tire, another example would be if the trailer hitch broke and they left the chisel plow on the side of the road and it's sticking out into the other lane of traffic. The justice asked how is that distinguishable from Maxim or the Perez case. Well, in those cases, though, you couldn't separate the injury from the motion of the vehicle itself. Here, the proximate cause, regardless of the method of conveyance, is the chisel plow itself and the fact that it is a piece of farm equipment. We're talking about a farm policy and it exceeds the length of the roadway. That's the proximate cause here. The conveyance of the chisel plow is incidental when reading the policy. And counsel had brought up public policy and you need to interpret the policy for what it's intended and we do not want commercial general liability policies or farm policies to cover motor vehicle accidents. I agree with that. If he wasn't towing a piece of farm machinery, it wouldn't be an issue. If the driver had ran a red light, it wouldn't be an issue. If the driver had failed to yield the right of way, it wouldn't be an issue because in those cases you're talking about the operation of a motor vehicle being the proximate cause or what's being covered. Here you have a farmer who cannot get his chisel plow to his farm, whether he's picking it up from where he bought it or he's going from farm to farm, without transporting it, whether it's by mule, tractor, vehicle, it has to be done. So he's engaged in the business of being a farmer at the time. He's getting his equipment there. And for these reasons, I think... Well, why does that matter to the insurance company? They're insuring a piece of farm equipment. Some guys put on the farm equipment in the field. Well, they're insuring the farm operation. They're not insuring farm equipment on a highway. Well, I think they would be insuring it if it was... Let's say the trailer hitch had broken. It was sitting on the side of the road, didn't have the flags on it, was sticking over halfway in the roadway. Or they pushed it into the highway. Correct, because the proximate cause of the operative fact is the width of the trailer hitch. But they've tried to directly or indirectly exclude motor vehicle causation. Right, and they could have solved this problem, because you asked earlier just in what language. In the Maxim case, which is cited, it defines a land motor vehicle trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. That language, which appears in the Rockford policy in the portion below, which may create an ambiguity to start with, could have been placed into the definition of motorized vehicle just as well. Then it would have made it clear, unambiguous, and we would know what we're talking about. In this case, you're a farmer. You're towing your piece of equipment that is wider than the roadway. It's the only way you can get it to your farm, and now you're not covered, and that's not part of your farm operation. If the council wants to talk about the purposes of these policies and whether they should ensure a risk, I think in this type of case, in this peculiar set of facts, that it would be applicable and it should cover the injuries and the claims by the various plaintiffs in the civil claim. Thank you very much. Thank you, counsel. Mr. Unrath, your vote. Thank you. Just briefly, Your Honor, opposing counsel both had one thing that they mentioned in common. They said, well, the disc chisel was the proximate cause of this accident, and I'd like to submit that the disc chisel cannot be a proximate cause. Disc chisel is a thing, not a cause. And there's a portion of my brief where I discuss a case where the court refused to find ambiguous the phrase arising out of, and I put that there for a reason. It was kind of an anticipatory argument that turns out was never made. But what I was anticipating is this, is that if you look at the language of the policy provision we're dealing with here, no coverage for injuries arising out of, directly or indirectly, the use of a motorized vehicle, arising out of. In other words, we're talking here not about things. We're talking about causes. How were these injuries caused? What about the argument, Mr. Doskotch, did I pronounce it correctly? Just made about, well, poor farmer, how's he going to move his stuff around? He's going to get it from one part of his fields to another. I think it's common practice, and I think that if he reads his policy, he has to realize that anyone insuring his pickup truck would know that he'd be using this for his business. They would know his occupation as a farmer, and they'd know that he'd be traveling on public highways. So it's the insurer of the pickup truck that takes that risk, not the insurer of the disc chisel? I agree, and it's something that. Well, let me ask it this way. If you're the insurer of the disc chisel for injuries arising out of that, what sort of injuries do you have in mind? What is contemplated? I think it's important, again, to point out that we're not insuring the disc chisel. We're insuring his farm operation. And, again, there's a distinction between are we insuring a thing here? No, we're insuring an operation. In the operation, there is coverage for personal injuries like that occurred here as long as those injuries occur on the premises. The moment you get up on a public highway, we're talking about an entirely different kettle of fish, and that's when. So your policy would be covered if the disc chisel were being pulled to buy a thresher or something in the fields for harvest time? Absolutely. Because it's a farm policy. Yeah, and if you look at the policy, there is a personal injury liability or liability for bodily injury for claims that occur or injuries that occur on the premises in the farm operation. The premises being the farm? Right, right. The counsel mentioned that the disc chisel is the insurable interest. Again, I would submit that that is irrelevant. What about the argument they made that you could have done a better job, as they did in Maxim, of making clear that the trailer wasn't included? I think the argument is answered by the case itself. It had to go to the appellate court. They still sued. In other words, no matter what. You mean the plaintiffs might be here anyway? Yeah, that's exactly it, Your Honor. Even though they had the necessary language involving a trailer, that didn't stop the litigation. They still had to go through the trial court and then on to the appellate court before it was finally resolved. There has to be a limit to my argument. And I found a case, and I don't want to give you names, but it's a daycare case. And they said apparently children were injured because they were left in a bus. And the insurer said, well, we're not covering that. That's the use of a motorized vehicle. And the court said, no, it isn't. They weren't using it as a motorized vehicle. They were using it as a storage container for the children. And they said the proximate cause was not the use of a motorized vehicle. There are limits to my argument. Even to your argument, Mr. Andre? To my argument. I have family and friends also that may be injured. Okay. And we want the protection there. But, again, I want to point out, though, just to conclude that the insurable interest is not the disc chisel. And the provision, the policy provision that we're dealing with, is focused on one thing, proximate cause. And the disc chisel is not a cause. It's a thing. Thank you very much. Mr. Ramante, the case itself is far more important than what I'm going to say. And I'm not going to say this. I'm not trying to embarrass you, but I want to be consistent with myself. And I've had the occasion within the last couple of weeks to remind council that if your shirt is too tight, you need to get another shirt. But it needs to be buttoned at the top and the top. I would prefer in the 21st century that we not wear ties. But as long as it's the custom and practice to do so, I can understand. It's happened to me before. We'll take the matter under advisement.